LEONIDAS A. JORDAN, adm'r, plaintiff in error, vs. LESSOMS FAIRCLOTH, &c., defendant in error.

[1.] Although there may be, at law, a remedy for a person, yet, unless that remedy is a complete one, he may, nevertheless, go into equity.

[2.] A judgment does not determine a question which, it appears of record, could not have been adjudicated.

[3.] Although a suit at law terminates in a verdict for the defendant, and not in a nonsuit, a discontinuance, or a dismissal, yet, if the case was such, that a nonsuit was all that the defendant was entitled to, by reason of a decision of the Court, excluding from the jury, the consideration of the plaintiff's title; and, the suit be renewed within six months in equity, the second suit will be held in equity, as within the Act of 1847, and saved from the statute of limitations.

[4.] An order to answer exceptions to an answer, did not specify a time within which the answer was to be put in.

*Held*, That the defendant had until the next Term to file his answer in, and, consequently, that, if he died before that Term, there was no right to take the bill for confessed, although he might have died without answering.

In Equity.   Decision on demurrer, in Dougherty Superior Court, by Judge ALLEN, at November Term, 1858.

This was a bill in equity, filed by Lessoms Faircloth, in his own right, and as guardian, against Leonidas A. Jordan, administrator of Benjamin S. Jordan, deceased.

The bill states, that at the ———— Term of Baker Superior Court, he commenced his action against Benjamin S. Jordan, of Baldwin county, for the recovery of lot of land No. 316, in the 2d district of then Baker, but now Dougherty county, and at the May Term, 1855, the same came on to be tried, and a verdict was rendered for the defendant, Jordan.

The bill further states, that the said lot of land was drawn by one John H. Baugh, of Madison county, at the time, but now of the county of Newton.   That on the 10th January, 1834, Baugh executed a deed to said lot to one John Carmichael ; that Carmichael conveyed said lot to Green L. Dennard, by deed dated 20th July, 1834 ; that Dennard conveyed to Reddin Faircloth, by deed dated 10th October, 1836; that

on the 17th January, 1837, Reddin Faircloth conveyed said lot to Thomas Starling; and on the 17th October, 1837, Starling conveyed the same to complainant, and one Shadrick Faircloth, now deceased, and for whose minor children complainant is guardian; all of which deeds of conveyance are in the possession of complainant, and under which he claims title to said land.

The bill further states, that upon the trial of said action at law, Jordan offered in evidence a plat and grant from the State of Georgia to said Baugh, for said lot of land, bearing date long after the date of Baugh's deed to Carmichael; then a deed from Baugh to one Giles Tompkins, of Putnam county, and a deed from John Tompkins, then of Baker county, but now deceased, to said Jordan, said John claiming said lot, under and by-virtue of the last will and testament of Giles Tompkins, deceased.

The bill further states, that one of the matters in issue upon said trial at law, was the execution of the deed by Baugh to Carmichael; and upon that issue the jury found that said deed was genuine, and executed by Baugh, but they nevertheless found a verdict for the defendant, Jordan, upon the ground, that at the time of the execution of said deed to Carmichael, the grant fees were unpaid, and the deed consequently void.  That in order to make Baugh a competent witness upon the trial of the action at law, Jordan executed to him a release from all liability on the covenant of warranty contained in the deed, which release also discharged all the intermediate warrantors.

The bill further states, that complainant's claim to said land is older than Jordan's, and that he and both the Tompkinses had notice of his title before they or any of them purchased the same.

The bill further states, that complainant, by bill of exceptions, carried said case, decided at law against him, to the Supreme Court of the State of Georgia, which Court affirmed the judgment of the Court below, holding that complainant's

only remedy was in a Court of Equity, and he therefore files this his bill.

The bill further states, that Jordan well knew all the facts connected with complainant's title, before he purchased of Tompkins, and he refused at first to buy said land, until John Tompkins undertook to remove, or to take up the outstanding title of complainant; that Tompkins being very desirous of owning a lot of land belonging to Jordan, called the "Blue Spring" tract, defendant offered to let him have said place if he would get lot No. 316 for him, as that lot is situated directly opposite Jordan's gate, and he was anxious to get it, but at a less sum or price than that put upon it by complainant, and it was concerted amongst them, that Giles Tompkins was to buy the land from Baugh, for his son John Tompkins, who would make the trade aforesaid with Jordan; that in pursuance of said arrangement, Giles Tompkins procured a deed from Baugh; and the Tompkinses and Jordan, at and before their purchases aforesaid, had full notice of complainant's claim and title, and that said purchase thus made by Jordan, was a fraud upon his rights.

The bill charges, that said Jordan has been in possession of said land since 1850, and that the rents thereof now amount to the sum of two thousand dollars, which he should account for.

The bill charges, that the equity of the case rests upon the notice received by Jordan and the Tompkinses of the title of complainant, and alleges that the Court, on the trial at law, refused to hear this question of notice, and ruled out all testimony on it; and that in this course the Court was sustained by the Supreme Court; and therefore, as the bill insists, the complainants are not bound by the verdict at law, and the matters are not adjudicated.

Pending the cause, Benjamin S. Jordan. the defendant, died, and Leonidas A. Jordan was appointed his administrator, and made a party defendant.

Before the death of Benj. S. Jordan, he answered com-

plainant's bill, to which answer exceptions were filed, three of which were sustained, and defendant ordered to answer over as to the matters therein referred to. No time was appointed within which this answer was to come in. Before Benj. S. Jordan answered over, and before the next Term of the Court, he departed this life, and his administrator answering, his answer was excepted to, but the exceptions are not stated.

Defendant moved to dismiss the bill for want of equity, and the case came before the Judge upon two motions, and exceptions to the answer of the administrator.

1st. A motion by complainant to take the bill *pro confesso*, as to the matters upon which defendant was ordered to answer over.

2d. Motion to dismiss the bill for want of equity.

The Court overruled the motion to dismiss for want of equity, and to which decision defendant excepted.

The Court refused to order the bill to be taken absolutely as confessed against Benjamin S. Jordan, upon the ground, that it appeared by the bill that complainant is not compelled to resort to the conscience of defendant, to obtain a discovery of the matters not answered by Benjamin S. Jordan, and upon which he was required to answer over. To which decision complainant excepted.

The Court further overruled the exceptions filed to the answer of Leonidas A. Jordan, administrator, upon the ground, that said answer is as full as said defendant could make it. To which decision, complainant also excepted.

VASON & DAVIS, for the defendant, Jordan.

E. H. PLATT, for complainants in the bill.

*By the Court.*—BENNING, J. delivering the opinion.

The Court below overruled the motion to dismiss the bill

for want of equity.  The first question, therefore, is, whether there was equity in the bill?

The grounds of the motion, as urged here, were three.

1. That the title of the complainants, if they had any, was a title they might assert at law.

2. That what was relied on by the complainants' as title, was no title, either at law or in equity, because it had once been asserted at law, and been adjudged there, to be no title.

3. That if it had ever been a title, it was now barred by the statute of limitations.

As to the first of these grounds :

[1.] The title of the complainants against the defendant, was, taking, as we must, the bill to be true, what is called, a complete equity.  And it is true, that, according to the later decisions of this Court, a complete equity is sufficient to support an action at law—an ejectment.  *Goodson vs. Beacham,* (24 *Ga*, 153,) is one of these decisions, and there are some others.  But none of these decisions go so far as to say, that the remedy at law, on such a title, is complete and adequate. Nor is it, generally ; for, in almost every case in which, the title is only equitable, the owner of the title, has the right to have, not only possession of the land, but a conveyance of the legal title.  This conveyance he cannot obtain at law, but only in equity.

And, in the present case, the complainants if entitled to the land, are entitled to have a conveyance of it, made to them, by Jordan.

This first ground, then, we think, not good.

As to the second ground: .

[2.] It is true, that what is relied on in this bill for title' was once relied on in an action at law, brought for the land by the complainants; but, it is not true, that it was, in that action, passed upon, and adjudged to be no title.   The main thing relied on in both suits, to make out the title of the plaintiffs, is, *notice*—notice of the title of the Faircloths, had by Jordan and the Tompkinses, when they purchased.   But,

in the suit at law, the question of this notice to them, was, expressly, excluded from the consideration of the jury. This appears of record. Of course, therefore, the title that depended on that notice, could not have been adjudicated by the Court and jury, in that suit.

As to the third ground :

[3.] The present suit in equity, was commenced within less than six months from the termination of the suit at law. The termination of that suit was, it is true, not by " nonsuit," "discontinuance" or "dismissal." And therefore the case does not fall within the very letter of the Act of 1847.   *Cobb*, 569. The case terminated by a verdict for Jordan, but, then, the reason of that, was, that the Court excluded from the jury, the consideration of the equitable title of the Faircloths, and excluded all evidence of that title. The Court having done this, the case was left in a condition in which, Jordan was entitled to a nonsuit, and to no more than a nonsuit. A Court of Equity, therefore, which, if possible goes by substance and not by form, will regard the verdict as amounting, in reference to the Act of 1847, to no more than a nonsuit; and, consequently, will regard the renewal of the suit within six months from the verdict, as a substantial compliance with that Act.

So, we think, that there was no validity in this the third and last ground. And thus we think that none of these grounds were sufficient to show that there was no equity in the bill. And we know of none ourselves that is sufficient to show that. Therefore we see no error in the judgment overruling the motion.

The next question is, as to the refusal of the Court to let the bill be taken as confessed in the parts which, Jordan, on exceptions to his answer, was required to answer over.

[4.] The order to answer over, did not set a time within which, the answer was to be filed. We think, therefore, that Jordan had until the next Term within which, to answer. Before the next Term, he died. Jordan, then, never having

been in contempt, there could be no ground for taking the bill as confessed by him.

We think, then, that the Court was also right, on this question.

The next and last question is, as to the sufficiency of the exceptions to the answer of the administrator of Jordan.

These exceptions are not to be found in the record. So we cannot decide the question.

Judgment affirmed.

McDONALD J. absent.